## BROWN v. BROWN.

Where there is a devise to two in succession, and it fails as to the first, for causes which but for the gift over would create a lapse, the next in succession takes.

Where land was devised to R for life, on condition that he should pay the testator's debts and legacies, and after his death to C and S in fee, and R died before the testator, it was held that on the testator's death C and S took the land in fee, and that their estate was not charged with the payments of the debts and legacies.

Prior to 1828 the testator owned and resided on the south part of lot 92; in 1828 he purchased the residue of 92 and parts of the adjoining lots 91 and 93, and moved into a house on the north part of 92, where he resided till his death. By his will, dated in 1854, he made the following devises; to his widow for life, "the farm on which I now reside," describing it by metes and bounds, which included the north part of 92 and a portion of 93; to C in fee, a part of 91; and to R for life, "my homestead farm, it being all the land I own in 91 and 92," with remainder to C and S in fee. The will did not dispose of all the testator's real estate. *Held*, that no interest in any part of the land devised to the widow was included in the devise to R, and that C and S, upon the death of the testator, who survived R, took no estate in the land devised to the widow and described by metes and bounds.

Where there is no latent ambiguity in a devise, parol evidence of the intention of the testator is inadmissible.

THIS was a real action, in which the plaintiff claimed one eighth of the premises in controversy, as one of the eight children and co-heirs of Caleb Brown, deceased. The defendants claimed the whole of the premises as devisees under the will of said Caleb, deceased.

It appeared that the deceased died seized of this and other contiguous real estate. He had eight sons and daughters living when he made his will, or who had living representatives when the will took effect. The plaintiff was a son, and the defendants were grandsons, and the sons of another of the deceased's sons, Rodney, who died before the testator.

The will of the deceased was dated March 20, 1854, and proved July 15, 1857.

1. He devised to his "wife, Sarah Brown, during her natural life, the farm on which I now reside, together with the buildings, bounded beginning at the southwest corner of N. Colby's school lot; thence west to Samuel Fitts' pasture, so called; thence south to south line of said pasture; thence west on old wall of said pasture to A. Fitts' pasture; thence north on old wall to land of John Emerson; thence east to the west line of the old homestead; thence following the west line north to High street; thence east and south to the first mentioned bound," without impeachment of waste, in satisfaction of her dower, &c.

2. He then gave various legacies to his wife and some of his children and grandchildren.

3. He devised to his grandson, Caleb Brown, son of his son Rodney, twenty acres of land bounded beginning at the northeast corner of my pasture, on the south line of N. Colby's school lot; then south following the west line of D. A. Fellows' land to the highway, thence west on the highway far enough to include 20 acres.

4. He devised to his grandson Sylvester, son of Rodney his son, ten acres of land, bounded beginning on the highway running by Rodney Brown's house, and running north on a stone wall to a cross wall; thence west following that cross wall far enough to include ten acres.

5. He devised to his " son, Rodney Brown, my homestead farm, it being all the land I own in lots Nos. 91 and 92, in the 3d division; also, the Knowles pasture, so called, lying south of the highway running by said Rodney Brown's house; also, the Cass pasture, lying south of said highway, meaning to convey to the said Rodney Brown the use and income of said property for and during his natural life, and after his decease to be the property of Caleb and Sylvester Brown, sons of the said Rodney Brown, to be given to them and to their heirs and assigns for ever."

6. He devised to George Brown, son of Rodney Brown, twenty acres, lying upon the west side of land herein devised to S. Brown, commencing on the highway and running north far enough to include twenty acres.

" The property herein devised to Rodney Brown is upon condition that the said Rodney shall pay all the foregoing legacies and all the debts which I may owe at my decease."

Rodney Brown died before the testator, and the widow in about a year after his decease. The testator left a small amount of debts, and the legacies amounted to about $480, a part of which has been paid by the executor of the will from money on hand, a part by sale of a part of the real estate, and $150 still remains unpaid.

The principal part of the estate was situated between the road called High street and one called Marden street, running southeasterly parallel to each other, and was composed of parts of lots 91, 92 and 93, agreeably to the plan.

The land of the testator, except the Cass pasture, is represented within the shaded line. The 20 acres devised to Caleb are on lot No. 91. The 10 acres to Sylvester, 20 acres to George, and the Samuel Fitts pasture devised to the widow, are in lot No. 93. The Knowles pasture is south of the Marden road and no part of these lots, and the residue and main body of the land is lot No. 92, and is all that lot except a small piece owned by French and marked F.

The testator originally owned the part of lot No. 92 inclosed by dotted lines, containing about 20 acres, and lived in a house erected by him about 1796, on Marden road, marked H. In 1828 he purchased the residue of his estate and moved into the house on High street marked H, in which his father lived when he was born, and he continued to live there till his decease in 1857. For a few years the testator leased his house on Marden street to different tenants, with varying quantities of land, till his son Rodney moved into

that house upon his marriage, after which he resided there till his death. Rodney, before and after his marriage, carried on the place with his father, and the hay was put sometimes in one barn and sometimes in the other. Each owned a part of the stock, which, with the exception of the cows, were kept in either barn, as happened to be convenient. The witnesses knew of no line of occupation between the testator and Rodney. There were several acres of tillage near the house on Marden road, and a large field for tillage near the High street house, but nearly surrounded by the pasture, which extended from High street to Marden road. This pasture was fed by the cattle on the whole place in common.

For the plaintiff it was contended that as Rodney's estate never took effect, the remainder to the defendants falls with it, and Caleb and Sylvester take nothing except the pieces of land devised to them in severalty in fee; that they can not take immediately in fee on the death of the devisor, because he gave them only a remainder; that they can not take the estates devised to them but on payment of the legacies and debts imposed upon their father, if they can take it at all; that the devisor, having given to his widow a present life estate in the farm "on which I now reside," describing by bounds the north part of his real estate, and having given to his son Rodney "my homestead farm" as a present estate and for his life only, must have considered these as two distinct estates; and the additional description, "it being all the land I own in lots Nos. 91 and 92," must be rejected as wholly inconsistent with the previous devise of a certain tract to his widow, and therefore the land devised to the widow was not further devised by the will, but was left to descend to the heirs at law; and it is for this part of the estate, as described in the devise to the widow that this action is brought, except the tract called the Samuel Fitts pasture, which being disclaimed, is not here in question. The defendants' counsel contended that the defendants took a vested remainder in the estate given to their father, and that the description, "all I own in lots Nos. 91 and 92," shows the whole was intended to be devised to him.

The defendants offered the evidence of the magistrate, N. Colby, by whom the will was written, of what the testator stated his intention to be at the time of writing the will, which was objected to by the plaintiff, and admitted, subject to the opinion of the whole court.

The witness then testified that he wrote the will of Caleb Brown, the testator, who was then about 86 years old. He said he wished to give his homestead farm to Rodney during his lifetime. The witness asked what he meant by his homestead farm, whether he meant the farm he lived on, and the testator said he meant all the land he owned in lots 91 and 92, in the third division.

The court found its decision in favor of the defendants, subject to the opinion of the court at the law term, which was to be set aside and judgment entered for the plaintiff, agreeably to the opinion of the full court, or judgment rendered for the defendants.

*Marston & Collins*, and *Christie*, for the plaintiff.

1. The will of Caleb Brown did not take effect till after his

decease. 1 Jarm. on Wills, ch. 25, p. 726 ; Bac. Ab., Title Wills (A). Rodney having died before the devisor, the devise to him became void, there being no person *in esse* capable of taking at the time the gifts vest.  Greenl. Cru., Tit. 38, ch. 8, sec. 24 ; *Fisher* v. *Hill,* 7 Mass. 86.  The Revised Statutes (ch. 156, sec. 11) are not applicable to this case, because the defendants do not claim to hold as heirs, but as purchasers ; if they could hold as heirs, they would have no greater estate than the devisee had, and therefore could only take an estate for life.

2. The devise to Sarah Brown for life of a part of lot 91, and the devise to Rodney for life of the whole of lots 91 and 92, are inconsistent.  When there is a devise to A in fee, and a devise to B in fee of the same land in the same instrument, the second devise is void in law, because of their inconsistency.  Ram on Wills 17 ; 1 Jarm. on Wills 157.  A fee mounted on a fee is a void devise.  3 Atk. 617.  By a parity of reason two estates for life can not exist concurrently.

3. The intention of the testator is to be sought for in the general tenor of the instrument, and any incongruous words and phrases which have found a place therein are to be sacrificed to the general scheme of the disposition.  1 Jarm. on Wills 420 ; 6 Greenl. Cru. 6, sec. 15.  The testator gives to his wife, Sarah Brown, during her natural life, " the farm on which I now reside," without impeachment of waste, in satisfaction of her dower, and makes certain his devise by describing it by metes and bounds.  There can be no doubt that he intended this devise to take effect immediately on his decease.  In giving a life estate to Rodney in the " homestead farm," a different estate was intended from that given to the widow.  By the " homestead farm" the devisor, no doubt, had reference to the place on Marden street.  He could not have intended to give Rodney a life estate in land, a part of which he had previously devised to his wife during her natural life, and twenty acres of which to Caleb in fee.  The words " it being all the land I own in lots 91 and 92 " are repugnant to the clear intent of the rest of the will, and must be rejected as surplusage.  *Bartlett* v. *King,* 12 Mass. 542.  Inconsistent words engrafted on a prior clear and express devise have been rejected.  1 Jarm. on Wills 421.

4. The intention of the testator is to govern in the construction, but it is the intention expressed by the will and not otherwise. *Tucker* v. *Seamen's Aid Society,* 7 Met. 205, and cases there cited. There is no ambiguity in the devise of the homestead farm to Rodney, and no extraneous evidence was needed to render it certain, and the evidence of the magistrate who wrote the will was inadmissible.  *Jackson* v. *Lile,* 11 Johns. 212 ; 1 Jarm. on Wills 358.

5. A contingent remainder must vest either during the continuance of the particular estate, or at the very instant of its determination ; so that if the event does not happen during the continuance of the particular estate the remainder becomes void.  2 Greenl. Cru. 205, sec. 17 ; 277, ch. 6 ; 2 Black. Com. 165 ; 4 Kent's Com. 207.

6. When there is a conditional devise, to entitle the devisee to hold under it, he must perform the condition annexed to it.  *Brad-*

*street* v. *Clark*, 21 Pick. 393; *Baker* v. *Dodge*, 2 Pick. 620; *Carter* v. *Carter*, 14 Pick. 428; *Prescott* v. *Prescott*, 7 Met. 145; *Hodgdon* v. *Stoughton*, 5 Pick. 534; 4 Kent 126, 127; 2 Greenl. Cru., ch. 2, secs. 10, 15, and 46, and notes.

*W. W. Stickney*, for the defendants.

1. The estate devised to the defendants by the will was a vested remainder in the land given to their father. *Bell* v. *Scammon*, 15 N. H. 381; *Smith* v. *Jewett*, 40 N. H. 530; 1 Fearne's Rem. 10–216; 1 Jarm. on Wills 727–730; 4 Kent's Com. 202; 2 Cru. Dig., ch. 1, sec. 43; Williams on Real Prop. 190; *Yeaton* v. *Roberts*, 28 N. H. 459, and cases cited; *Dingley* v. *Dingley*, 5 Mass. 535; *Brown* v. *Porter*, 4 Pick. 196; *Richardson* v. *Wheatland*, 7 Met. 169; *Brown* v. *Lawrence*, 3 Cush. 390; *Moore* v. *Lyons*, 25 Wend. 119.

2. By the death of Rodney Brown before the testator, the remainder given to the defendants took effect and vested in them in possession immediately on the death of the testator. It is a well settled rule in the construction of wills, that where property is limited to several in succession, and the first devise lapses or fails on account of the death of the devisee or his refusal to accept the devise, the ulterior limitations take effect as if no precedent estate had been created. 6 Cru. Dig., ch. 8, secs. 25, 26; *Yeaton* v. *Roberts*, 28 N. H. 459; *Prescott* v. *Prescott*, 7 Met. 141; 1 Jarm. on Wills 730. A will becomes operative at the death of the testator, and the court will construe it as to the estate of the objects at that time, though by such construction the devisees may take estates different from those they would have taken, had the state of things contemplated in the will existed when it took effect, the principle being to disregard entirely those devises which have failed and construe the others so that they may take effect in accordance with the intent of the testator. 1 Jarm. on Wills 788, 789; Fearne's Rem. 525.

3. The defendants are not liable for the debts and legacies, as they are not charged upon the land. If the debts and legacies can be considered a charge upon the land at all, it is only upon Rodney's estate therein, which did not come to the defendants but failed on account of his death. *Temple* v. *Nelson*, 4 Met. 584.

If it be held that the debts and legacies are a charge upon the land in the hands of the defendants, the proper remedy of the plaintiff, whether he be a creditor or a legatee unpaid, is not by a writ of entry, but by a different process for the recovery of his debt or legacy. The charge upon the land in such case is considered as security, and does not operate to defeat the devise upon non-payment of the debts and legacies. *Bradstreet* v. *Clark*, 21 Pick. 389; *Taft* v. *Morse*, 4 Met. 523. There has been no forfeiture of the land in this case, even if held on condition as contended for. It does not appear that the defendants have ever been called upon by the legatees or executor to pay the debts or legacies, or that they have ever refused to pay them.

4. The defendants are entitled to hold all the land in lots 91 and 92, according to the terms of the will. The language of the will

is, " my homestead farm, it being all the land I own in lots Nos. 91
and 92, in the third division."

The homestead farm of the testator embraced all his land in lots
91, 92 and 93, that is, all his land in these three lots adjoined, and
was carried on together as one farm.   Rodney was a mere servant of
the testator, and occupied only a small part for his own use, which
was different in different years.   There were not two farms separated
by any known line of demarcation.   These words, " all the land
I own in lots Nos. 91 and 92," were intended as a restriction upon
the devise to Rodney—if those words are rejected, he would take
all the land in 91, 92, and 93.   So in the devise to his wife, " the
farm on which I now reside, together with the buildings bounded,"
&c. ; the description which follows was intended as a restriction
upon the devise to her—without them she would have taken all the
land in the three lots.   The words " my homestead farm," and
" the farm on which I now reside," mean the same thing, and the
words which follow in each case were introduced to define what the
testator intended each should have.   If there had been two farms
separated by a known line of demarcation, it would have been
unnecessary to specify the boundaries.   *Woodman* v. *Lane*, 7 N. H.
241 ; *Barnard* v. *Martin*, 5 N. H. 536.   There is no rule or prin-
ciple of law known to us, by which the words " it being all the
land I own in lots Nos. 91 and 92, in the third division," can be
rejected.

The whole will is to be considered and such construction given
as will give effect, if possible, to every part of it.   *Drew* v. *Drew*,
28 N. H. 489 ; *Hall* v. *Chaffee*, 14 N. H. 215 ; *Tucker* v. *Society*, 7.
Met. 205.   The language in the will is plain and explicit, and the
land in those lots was well known and marked by distinct
boundaries.   Where words are entirely repugnant to other parts
and the general intent of the will, they may be rejected, but the
court never reject any part of a will but upon the failure of every
attempt to give to the whole such construction as will render every
part of it effective.   1 Jarm. 415.   Where one part of a will is
inconsistent with some other part and can not be reconciled, the
rule is that the last clause or gift shall stand.   1 Jarm. on Wills
410.   Where the same property is given to different persons, the
better opinion seems to be that the legacy to the last person shall
stand.   1 Jarm. 417 ; 6 Cru., ch. 9, sec. 32.   In some cases it has
been held that the two devisees take concurrently as tenants in com-
mon.   1 Jarm. 417, 418.   If, therefore, these words are so entirely
inconsistent with other parts of the will that they can not be
reconciled and the whole stand, the rule seems to be that this last
clause shall stand and have effect as the latest intention of the tes-
tator, and the other parts be defeated.

We think, however, that a construction may be fairly given to
the will, which will give effect to the whole, according to the inten-
tion of the testator, without striking out these words.   The inten-
tion of the testator undoubtedly was, that his wife should have the
land devised to her during her life ; that his son Rodney should
have the land devised to him during his life ; but should not

have the part devised to his wife until her death, and that the land should go to the defendants in fee after the death of his wife and of Rodney. He omitted to state in the will, that Rodney and the defendants were not to come into possession of the land devised to his wife until after her death, but we think that it must be understood or inferred from the will as it now is, and from the circumstances known to exist at the time, that such was his intention, and the will should be construed the same as if these words were inserted. It should be borne in mind that his wife was aged, and that Rodney was in the prime of life, and would in all probability survive her, in which case he could have the use of the land devised to her during the remainder of his life. This construction gives effect to every part of the will and we think is supported by authorities. Where land was given to A in fee and afterward given to B for life, it was held that B should have the land for life, and A have the remainder in fee. So when a testator devised all his estate to A, and afterward devised Blackacre to B, it was held that B should have Blackacre. 1 Jarm. 416. A similar rule of construction applied to this will, would give to each party the estate devised to them without striking out or rejecting any part of the will. There is no contest here between different legatees claiming the same property under the will. The widow and Rodney, who had life estates given to them, having deceased, it would seem that the defendants were clearly entitled to the property devised to them after the termination of the life estates; but the plaintiff comes in as an heir, and claims a large and the most valuable part of the property, on the ground that it was not devised by the will to any one, and in order to sustain his position he has to strike out or reject an important part of the will—that part which describes in plain and explicit language the property devised to the defendants. This we believe the court will not do. The testator speaks in the first part of the will of disposing of his worldly estate; but if those words are rejected and their construction of the will sustained, it would leave a large part of his estate undevised, which is a strong reason against the construction claimed by the plaintiff. *Claflin* v. *Perry*, 12 Mass. 420. Our construction, which gives effect to the whole instrument, evidently better accords with the apparent general intent of the testator.

The declarations of the testator at the time he made his will are admissible, as showing what he intended by his homestead farm should be given to the defendants. *Peaslee* v. *Seminary*, 15 N. H. 317.

BARTLETT, J. The devise of the remainder to the defendants was not defeated because Rodney, to whom the life estate was given by the will, did not survive the testator. "It is well settled that where there is a devise or legacy to two in succession, and it fails as to the first for causes that would, but for the gift over, create a lapse, the next in succession shall take it." *Yeaton* v. *Roberts*, 28 N. H. 468; 4 Com. Dig., Estate by Devise, K; *White* v. *Warner*, 3 Doug. 4. The estate given to Rodney was but for his life, and

therefore the provision of the Revised Statutes (ch. 156, sec. 11) does not apply; and as the defendants did not take the estate devised to Rodney, they are not bound by the charge or condition affixed to his estate, and the will imposes no charge or condition upon the estate it gives them. See *Temple* v. *Nelson,* 4 Met. 584. Therefore, upon the testator's death, the defendants took a fee in the lands given by the will to Rodney for his life.

The principal question in this case then is, whether the testator by his will gave Rodney a life estate in the north part of lot 92—that part of the lot which he devised to his widow for her life. The defendants claim that he did, because to the words " my homestead farm," he adds " it being all the land I own in lots 91 and 92.". The whole of this will can not take effect literally, for it also contains previous devises of the north part of lot 92 to the widow for life, and of twenty acres in 91 to Caleb in fee, with no intimation that the estates of the widow, of Caleb and of Rodney were not all to take effect in possession upon the testator's death. If there had been merely devises of the twenty acres in fee to Caleb, and of the same to Rodney for life, the latter would have taken a life estate and the former a fee in remainder. 1 Jarm. 416. If the testator had by his will given the twenty acres in fee to Caleb and had also devised the same to Rodney in fee, each would have taken a moiety. 1 Jarm. 417. Because, in these cases, effect could only be given to both clauses in these modes, they are construed in reference to each other. So it has been held that " where a testator, after devising his whole estate to A, devises Blackacre to B, the latter devise will be read as an exception out of the first, as if he had said, I give Blackacre to B and subject thereto all my estate, or the residue of my estate to A. *Cuthbert* v. *Lempriere,* 3 M. & S. 158. And where a testator gives to B a specific fund or property at the death of A, and in a subsequent clause disposes of the whole of his property to B, the combined effect of the several clauses as to such fund or property is to vest it in A for life and after his decease in B. *Blamire* v. *Gildart,* 16 Ves. 314 (Sumn. Ed.), and note a. In *Hitchcock* v. *Pardoe,* 2 Black. 975, where the testatrix devised to A a farm in the occupation of C, and to B all her lands in L. marsh, and it appeared that part of the farm in the occupation of C consisted of lands in L. marsh, but there was another estate, not in his occupation, consisting entirely of marsh lands in L; it was held that the subsequent devise was not a revocation of the preceding, but that A took the farm and B the marsh land not included in the farm. So if A having lands in four counties devises those in three counties to his wife in part and in part to others, and afterward devises all to his wife, generally, for the benefit of his son, this shall be extended only to the lands in the fourth county. Com. Dig., Est. by Dev., N, 24. In these cases the different clauses were construed in reference to each other. 1 Jarm. 417–420; 6 Cru. (Greenl. Ed.) 135, n., 149, n.

Upon this principle we think the devise to Rodney must be construed in reference to the devise to the widow, and must be deemed a devise to him of the homestead farm, being all the lands

owned by the testator in lots 91 and 92, subject to the prior devise, excepting the land given in that. In order to give effect to both clauses, it is not necessary to hold that Rodney would have taken a moiety of the part of 92 devised to the widow. That construction would no more give him all the land the testator owned in 91 and 92 than the one we have adopted, and it would also prevent full effect being given to the explicit devise by metes and bounds to the widow. Indeed this is not claimed by the defendants, and the testator seems to have intended her to take that entire part of 92 as fully as the Fitts pasture. There is not such identity of the lands devised as to lead us to that construction. We can not hold that a life estate was given to Rodney in that part of the lot, to take effect after the widow's death. The gifts to each are not exactly of the same thing, and if they were, there is nothing to indicate which should take effect first, as in case of a devise to one in fee, and to another for life, of the same land. In that case there is but one way in which both can be made effectual; but here both would be operative just as well by holding one prior as the other, and in the absence of any thing to show which should have priority, we think such a rule of construction can not be applied. The only other way in which the defendants' claim can be supported is by rejecting entirely so much of the devise to the widow as gives her land in 92; but we think there is no such incurable repugnancy here as to require the application of this rule of last resort.

Upon an examination of the provisions of the will and the facts in the case, we think the construction, to which we have been led by the authorities, in fact gives effect to the testator's intention, although that is somewhat obscurely and inartificially expressed. Upon such an examination quite a number of circumstances will be found tending to show this, and it will also appear that the testator did not devise all his real estate, but left one part of the Fitts pasture and the remainder in another part of it undisposed of. The principle of construction we have adopted raises fewer inconsistencies in the will than that contended for by the defendants, as will be seen upon attempting to apply the latter to the devise of twenty acres to Caleb.

It seems to us that upon the authorities no interest in the lands given to the widow was devised to Rodney, and that as the defendants take only the lands devised to Rodney, they have no title under the will to the premises in dispute.

This being the legal construction of the will, there is no latent ambiguity, and parol evidence of the testator's intention can not be received.

According to the provisions of the case, the decision of the court at the trial term must be set aside, and judgment entered for the plaintiff.